NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| ALEXANDRA CLARK, and JAMES BYRNE, individually and on behalf of all other similarly situated, | : : : : : : : : : : : : : : : | **Civ. Action No. 2:24-cv-10681-BRM-AME**<br><br>**OPINION and ORDER** |
| Plaintiffs,<br><br>v.<br><br>PRIME HEALTHCARE SERVICES – SAINT CLARE'S, LLC, a California Limited Liability Company, |  |  |
| Defendant. |  |  |

**ESPINOSA, U.S.M.J.**

This matter is before the Court on the motion by Plaintiffs Alexandra Clark ("Clark") and James Byrne ("Byrne") (together "Plaintiffs") seeking attorneys' fees and a contingency fee enhancement under New Jersey's Law Against Discrimination. Plaintiffs seek fees in the amount of $76,707.90 for the work of three lawyers and a paralegal, and a fee enhancement of fifty percent of that amount, $38,353.95, for a total award of $115,061.85. Defendant Prime Healthcare Services – Saint Clare's LLC ("Defendant"), opposes the aggregate award, arguing the fees are based on excessive hourly rates and unreasonable and wasteful time expenditures, and that Plaintiffs have failed to meet their burden to show any enhancement is warranted. The Court has carefully reviewed the parties' filings and decides the motion without oral argument. *See* Fed. R. Civ. P. 78(b). For the following reasons, the motion is granted in part and denied in part, and the Court awards Plaintiffs $49,9999.75 in fees and an eight percent enhancement of $3,999.98, resulting in an aggregate award of $54,355.53, inclusive of $355.80 in costs.

1

I.       **RELEVANT FACTUAL AND PROCEDURAL HISTORY**

Defendant, a Delaware corporation, operates a hospital in Denville, New Jersey, where Plaintiffs, New Jesey residents, have been employed since 2023. Pls.' Second Am. Compl. ("Second Am. Compl.") at ¶¶ 35-36. Plaintiffs allege that in the fall of 2024, Defendant violated their rights under the New Jersey Law Against Discrimination ("NJLAD") by failing to entertain their requests for religious exemptions from its mandatory policy that all employees be annually vaccinated against the influenza virus. Second Am. Compl. at ¶¶ 50-54. Clark filed this case in the Superior Court of New Jersey as a putative class action on October 18, 2024. A week later, Clark declined Defendant's request to arbitrate her claim under an agreement purporting to require it. Def.'s Opp'n Br. at Ex. A.

On November 22, 2024, Defendant removed the action on the basis of diversity jurisdiction, under 28 U.S.C. § 1332(a). *See* Notice of Removal. On December 4, 2024, Clark together with Byrne filed a First Amended Complaint, which added a non-diverse defendant, Karen Vera ("Vera").[1] *See* Pls.' First Am. Compl. ("First Am. Compl."). The parties entered a stipulation to permit Defendant more time to file an Answer and to initiate immediate settlement discussions. *See* December 26, 2024 Stipulation and Order. On January 13, 2025, Plaintiffs demanded $50,000 to resolve all claims and counsel fees[2] and Defendant countered with an offer of $10,000 on January 31, 2025, which Plaintiffs rejected. On February 3, 2024, Plaintiffs reduced its all-in demand to $47,500, which Defendant countered three days later with $25,000 inclusive of fees. Pls.' Mot. for Atty Fees ("Motion for Fees") at 8-9 of 25. A week later, on

---

[1] Byrne, like Clark, declined to stipulate to arbitration despite Defendant producing an agreement Byrne signed that purported to require it. Def.'s Opp'n Br.  Ex. B.

[2] This amount would have been apportioned: $25,000 to Clark; $7,500 to Byrne; and $17,500 to counsel. Motion for Fees at 7-8 or 35.

February 10, 2024, Plaintiffs ended negotiations despite Defendant's request for another counteroffer. Def.'s Opp'n Br. at 3.

On February 18, 2025, Plaintiffs filed a motion to remand and Defendant filed a motion to compel arbitration. *See* Pls.' Mot. to Remand; Def.'s Mot. to Compel Arbitration. Before briefing on either motion was complete, Defendant made offers of judgment under Federal Rule of Civil Procedure 68 to Clark and Bryne for $30,000 and $5,000, respectively, which each accepted.[3] Motion for Fees at 10 of 35. The offers of judgment left Plaintiffs' attorneys' fees for determination by the Court. *Id*. On March 19, 2025, Plaintiffs filed a Second Amended Complaint which eliminated Vera, the non-diverse Defendant. *See* Second Am. Compl. The parties then began short-lived negotiations to reach agreement on the question of fees without Court intervention. *Id*. Plaintiffs' counsel initially demanded $56,000. On April 14, 2025, Defendant countered with $20,000, which Plaintiffs' lead counsel rejected within minutes of delivery, with a declaration that he would prepare and file a fee application. *See* Def.'s Opp'n Br. at Ex. D. Defendant sought a counteroffer, which the record does not reflect was ever made. *Id*. On April 28, 2025, Plaintiff filed this motion seeking $113,995.80 in aggregate fees. *See* Motion for Fees.

## II.    THE FEE PETITION AND THE PARTIES ARGUMENTS

Plaintiffs argue they are entitled to $113,995.80 under the NJLAD and New Jersey caselaw. In relevant part, the NJLAD states "the prevailing party may be awarded a reasonable attorney's fee." N.J.S.A. 10:5–27.1. Here, because Plaintiffs accepted from Defendant offers of

---

[3] Rule 68 states in relevant part: "More than 10 days before the trial begins, a party defending against a claim may serve on an opposing party an offer to allow judgment on specified terms, with the costs then accrued. If, within 10 days after being served, the opposing party serves written notice accepting the offer, either party may then file the offer and notice of acceptance, plus proof of service. The clerk must then enter judgment." Fed. R. Civ. P. 68.

judgment under Rule 68, they are each a prevailing party, consistent with the explicit provisions in those respective offers of judgment agreeing to leave to the Court determination of the appropriate fee amount. *See Lima v. Newark Police Dep't*, 658 F.3d 324, 331 (3d Cir. 2011) (observing that when a valid Rule 68 offer of judgment "is silent as to fees and costs, they must be fixed by the court after the offer of judgment is accepted."). *See also* Notice of Acceptance as to Bryne at 4 of 5 ("Defendant shall pay [Bryne's] reasonable attorney's fees and costs as determined by the Court."); Notice of Acceptance as to Clark at 4 of 5 ("Defendant shall pay [Clark's] reasonable attorney's fees and costs as determined by the Court.").

Plaintiffs argue the fees they seek are reasonable under the lodestar framework using hourly rates tethered to the Philadelphia Community Legal Services ("CLS") fee schedule and the Laffey Matrix. Motion for Fees. at 14. In support of their fee application, Plaintiffs submit charts and tables identifying the lawyers and others who worked on this action, the dates and hours of that work, and descriptions of the work, along with declarations from those who billed for work on the case. *Id.* at 13-26; Decl. of John D. Coyle ("Coyle Decl.") at 2-4. Based on the assertions in those materials, Plaintiffs calculate a total fee amount of $76,707.90 for the work of three lawyers and a paralegal.

Plaintiffs also argue they are entitled to a contingency fee enhancement based on the substantial risk their counsel undertook by accepting this matter. Motion for Fees at 27-28. Among other arguments, Plaintiffs contend this action involved "substantial risk" because "[v]ictory in these [religious objection to vaccine requirement] matters is nothing if not uncertain." *Id*. at 29. While conceding their counsel has "been able to resolve many" of these cases, Plaintiffs assert they have "not been able to settle all cases," and point to a single case they litigated extensively but did not prevail in during arbitration. *Id*.

Defendant opposes the $115,061.85 aggregate fee and enhancement award Plaintiffs seek. First, Defendant argues the $76,707.90 in fees is unreasonable because the rates and hours that form the basis of Plaintiffs' loadstar calculations are both excessive. Def.'s Opp'n Br. 9-10. Second, Defendant argues that Plaintiffs' request for an additional $38,353.90—an enhancement representing fifty percent of their lodestar calculation—is unjustified in view of the facts and circumstances of this case. Specifically, Defendant argues this was a "simple case that resolved early," and that despite "Plaintiffs melodramatic[] attempt to frame it as a 'David and Goliath' sort of situation," the case required "no vigorous or wide-ranging defense, or any defense at all," and resolved by way of an offer of judgment before the only motions in the case were fully briefed. *Id*. at 35 of 36.

## III.   ANALYSIS

A party seeking an award of attorneys' fees bears the burden of establishing the reasonableness of its request. *Interfaith Cmty. Org. v. Honeywell, Int'l, Inc.*, 426 F.3d 694, 703 n.5 (3d Cir. 2005). To do so, it must provide evidence "supporting the hours worked and rates claimed." *Id.* (quotations omitted). The opposing party then has the burden of challenging the reasonableness of the requested fee, "by affidavit or brief with sufficient specificity to give fee applicants notice." *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990).

To determine the amount of a reasonable fee award, the Court must begin by calculating the lodestar, which is the "'number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.'" *McKenna v. City of Phila.*, 582 F.3d 447, 455 (3d Cir. 2009) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). "The lodestar is strongly presumed to yield a reasonable fee." *Washington v. Court of Common Pleas*, 89 F.3d 1031, 1035 (3d Cir. 1996).

However, the Court "has the discretion to make certain adjustments to the lodestar." *Rode*, 892 F.2d at 1183.

### A. The Reasonableness of the Hourly Rates

As part of calculating the lodestar, courts "must examine whether the requested hourly rate is reasonable." *Rode*, 892 F.2d at 1183. The hourly billing rate for services must be reasonable "given the geographical area, the nature of the services provided, and the experience of the lawyer." *S.S. Body Armor I., Inc. v. Carter Ledyard & Milburn LLP*, 927 F.3d 763, 773 (3d Cir. 2019) (quoting *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n.1 (3d Cir. 2000)). "Generally, a reasonable hourly rate is to be calculated according to the prevailing market rates in the relevant community." *Rode*, 892 F.2d at 1183 (citing *Blum v. Stenson*, 465 U.S. 886, 895 (1984)). More specifically, courts "should assess the experience and skill of the prevailing party's attorneys and compare their rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Rode*, 892 F.2d at 1183 (citing *Student Public Interest Research Grp. v. AT&T Bell Laboratories*, 842 F.2d 1436, 1447 (3d Cir. 1988); *Blum*, 465 U.S. at 895 n. 11).

Courts in this District have explained that the reasonableness of a fee is informed by New Jersey Rule of Professional Conduct 1.5, which provides factors courts should consider in such an analysis:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
>
> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services;

(8) whether the fee is fixed or contingent.

N.J.R.P.C. 1.5(a); *see also Hamburg SUD N. Am., Inc. v. Karembri Distr. LLC*, No. 19-19370, 2023 WL 2535327, at *3 (D.N.J. Mar. 16, 2023) (quoting *Furst v. Einstein Moomiy, Inc.*, 182 N.J. 1, 22 (2004)) (explaining that "the eight factors listed in New Jersey Rule of Professional Conduct 1.5(a) 'must inform the reasonableness of a fee award ... in every case.'"); *Furst*, 182 N.J. at 21-22 (stating that "Rule of Professional Conduct 1.5(a) commands that 'a lawyer's fee shall be reasonable' in all cases, not just fee-shifting cases.").

Defendant challenges Plaintiffs' proffered hourly rates in several respects. First, it argues Plaintiffs unreasonably rely on the CLS rates to set those rates. Def.'s Opp'n Br 7-8. Defendants note that this case is not venued in Philadelphia and that Plaintiffs fail to cite any basis for using Philadelphia, and not New Jersey, to find reasonable rates for employment discrimination counsel. *Id*. For similar reasons, Defendant also opposes reliance on the Laffey Matrix, arguing it is only relevant for the Washington D.C. and Baltimore area. Defendant contends that the billing rates of Plaintiffs' two lead lawyers, Mr. Coyle and Mr. Soutar, do not reflect customary and reasonable rates given their experience because they are not tethered to rates of employment litigators in the relevant market. *Id*. at 9-10.

7

Next, Defendant challenges the specific, proffered billing rates for Plaintiffs' litigation team members. Defendant argues the $650 hourly rate for Mr. Coyle exceeds the highest rate any court has ever approved for his work, $585, and contends there is no basis for this Court to approve the higher rate applied to Plaintiffs' calculation here. *Id*. at 9-11. Likewise, Defendant urges this Court not to permit a rate for Mr. Soutar beyond the amount he proffers: $525 per hour.[4] *See* Motion for Fees at 14; Def.'s Opp'n Br. at 11. Defendant also challenges the reasonableness of the $400 rate for Ms. Caparosa, an associate who began her legal career in the fall of 2022, because it is higher than the CLS range for a lawyer with her experience. Def.'s Opp'n at 10. Finally, Defendant challenges the $175 rate for Ms. Sullivan, a paralegal, as unreasonable and unfounded because she only completed administrative work. *Id*. at 11.

In their reply brief, Plaintiffs object to Defendant's arguments concerning their attorney billing rates but nevertheless agree to the following reduced hourly rates: $585 for Mr. Coyle; $525 for Mr. Soutar; and $285 for Ms. Sulivan. Pls.' Reply Br. at 4.

The Court finds those revised hourly rates for Mr. Coyle and Mr. Soutar are reasonable when measured against rates in the northern New Jersey legal market, that of the greater New York metropolitan area, and those reflected in the CLS, given their respective educational backgrounds, experience, and expertise.[5] However, concerning Ms. Caparosa, given her limited experience at the time this action arose, even the revised rate of $285 is excessive. Instead, the

---

[4] Defendant observes that $700 per hour is the highest rate any Court has approved for Mr. Soutar's work but distinguishes that case as involving a protracted class action under the Individual with Disabilities in Education Act, which the presiding court described as particularly complex. *Id*. at 9-10.

[5] The Community Legal Services of Philadelphia Attorney Fees schedule provides that, effective January 19, 2023, the "range of hourly rates" for "attorneys 11-15 year's experience" is "$420-525," and the "range of hourly rates" for "attorneys more than 25 year's experience" is "$735-850." *See Attorney Fees*, COMMUNITY LEGAL SERVICES OF PHILADELPHIA, https://clsphila.org/about-community-legal-services/attorney-fees/ (last accessed May 24, 2026). The Laffey Matrix provides that, for year June 1, 2024, to May 31, 2025, the hourly rate for an attorney 11-19 years out of law school is $948, and the hourly rate for an attorney 20 or more years out of law school is $1,141. *See* LAFFEY MATRIX, http://www.laffeymatrix.com/see.html (last accessed May 24, 2026).

Court approves a rate of $250 per hour, which approximately coincides with the suggested CLS rates for similarly situated attorneys. Finally, the Court finds fees associated with Ms. Sullivan's work, at any rate, are unjustified. Her time log reflects that she completed only administrative tasks, and thus an award of attorneys' fees for that work is not warranted. Motion for Fees at 16.

## B.  The Reasonableness of the Hours Worked

In addition to assessing the reasonableness of the proffered hourly rates, courts analyzing a fee application must "review the time charged, decide whether the hours set out were reasonably expended for each of the particular purposes described and then exclude those that are 'excessive, redundant, or otherwise unnecessary.'" *Pub. Interest Research Grp. Of N.J. v. Windall*, 51 F.3d 1179, 1188 (3d Cir. 1995) (quoting *Hensley*, 461 U.S. at 433-34).

Here, the Court has carefully reviewed the time sheets provided by Plaintiffs' counsel to determine whether the work performed falls within the scope of compensable activities and, if so, whether the time spent on those tasks is reasonable. They list many activities challenged by Defendant as unnecessary, excessive, duplicative, or otherwise unreasonable. The Court will discuss certain of those specific instances. However, the Court need not, in this Opinion and Order, itemize and assess individually every specific billing entry. Rather, the Court discusses those main areas of dispute to illuminate the basis for its final award—which is the product of close scrutiny of the entire record. As set forth above, the Court concludes that $54,355.53 is the only amount reasonably supported by the record.

## 1.  Reviewing the Arbitration Agreement

According to the time sheets, on October 25, 2024, Mr. Coyle spent 5.4 hours reviewing Plaintiffs' arbitration agreement. Motion for Fees at 17; Coyle Decl. Ex. A at 11. That Arbitration Agreement is less than five pages long. In the Court's view, an experienced senior

partner would require far less time than logged by Mr. Coyle to review such a short document and confer with other counsel regarding its contents. A reasonable amount of time on this task is approximately 1.5 hours. The 5.4-hour billing entry suggests inefficiency and/or calculation imprecision.

### 2. Drafting the First Amended Complaint

After Defendant removed this action based on diversity jurisdiction, Mr. Soutar logged 4.2 hours reviewing the Notice of Removal and beginning to draft the First Amended Complaint, which added Byrne as a plaintiff and Vera as a non-diverse defendant. *See* First Am. Compl. Later, Mr. Soutar billed 9.5 hours to draft a Second Amended Complaint that removed Vera after Plaintiffs abandoned their effort to defeat diversity jurisdiction. *See* Second Am. Compl.; Motion for Fees at 17; Coyle Decl. Ex. A at 11. The Court's review of those successive Complaints reveals negligible substantive differences between them to support a total of more than 9.5 hours of work by a senior partner. From any reasonable perspective, a senior partner spending more than 9.5 hours to complete barely revised pleadings is excessive. Given the similarities between the original and two amended Complaints and Mr. Soutar's experience, the permissible hours must be reduced to 3.5.[6] Additionally, the 1.3 hours logged by Mr. Coyle for his review of the Second Amended Complaint is unreasonably duplicative of Mr. Soutar's work and must be excluded from the final lodestar calculation. Motion for Fees at 17; Coyle Decl. Ex. A at 11.

### 3. Reviewing and Rejecting Initial Settlement Offer

Next, Defendant challenges the hours spent by Plaintiffs' counsel on their review and response to Defendant's initial settlement proposal. Motion for Fees at 19-20. In total, Plaintiffs' counsel assert they spent approximately ten hours reviewing that offer, discussing it with their

---

[6] The Court notes that as with Mr. Coyle's review of the arbitration agreement, the time charged in this instance exceeds the reasonable time by a multiple of three, another significant billing overage.

clients, and responding. *Id*. That assertion is unreasonable. Given the training and experience of Plaintiffs' attorneys, three hours to review and discuss this offer is more than sufficient, even accounting for explanations to clients potentially lacking sophisticated legal knowledge or the ability to assess the risk of going to trial.[7]

### 4. Plaintiffs' Counsel's Motion to Remand

Plaintiffs next seek attorneys' fees for time spent on the motion to remand. Motion for Fees at 20-21. Plaintiffs' counsel assert they spent more than 20 hours on the remand motion. *Id*. That amount is unreasonable. Nearly 17 of those hours were spent drafting and revising the motion. *Id*. Yet, the motion consisted of a short, eight-page brief focused on the simple question of whether the Court lacked diversity jurisdiction in view of the addition of a non-diverse defendant to the action. The Court finds that 10 hours constitutes more than sufficient time for attorneys with decades of experience to research, draft, edit, and file such a straightforward remand motion. Here, the amount of time proffered by counsel is twice the reasonable amount.

Having addressed specific entries from Plaintiffs' time sheets that Defendant argues require reduction, the Court now assesses Defendant's proffered table of Plaintiffs' reasonable fees, which summarizes all Plaintiffs' billing entries and proposes revised amounts. *See* Def.'s Opp'n Br. Ex. to Hank Cert. ("Ex. to Hank Cert."). Defendant's table calculates an aggregate of $33,481.40 in fees. *Id*. at 52. The Court does not adopt that amount or all the reductions proposed in Defendant's table. Rather, in addition to the reductions identified in the discussion above (approximately 28.3 hours), the Court finds appropriate a further reduction of 6.74 hours. Specifically, the Court reduces the time spent by Plaintiffs' counsel drafting the motion for fees, because it involves lengthy analysis and discussion of litigation steps taken by Plaintiffs earlier

---

[7] Again, here, the proffered time was more than three times what the Court finds reasonable.

in this action that could have been avoided with additional good faith settlement discussions, which Plaintiffs elected to forego in favor of needlessly aggressive litigation.[8] Those excess costs are unreasonable. *See* Ex. to Hank Cert. at 51-52 (challenging 17.8 hours for fee application work on April 15, 16, 18, 23, 2025).

Accordingly, the Court calculates a final lodestar amount of $49,999.75 based on the reasonable hourly rate and reasonable hours billed by each member of Plaintiffs' litigation team, as set forth in the following table:

| Biller | Hourly Rate | Proffered Hours | Revised Hours | Fees |
|---|---|---|---|---|
| Coyle | $585 | 83.3 | 60.10 | $35,158.50 |
| Soutar | $525 | 36.8 | 26.55 | $13,938.75 |
| Caparosa | $250 | 5.0 | 3.61 | $902.50 |
| TOTAL | | 125.1 | 90.26 | $49,999.75 |

### C. Enhancement of the Lodestar Calculation

Contingency enhancements generally are not available under federal fee-shifting statutes. *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 554–57 (2010) (holding that contingency fee enhancements are limited to "rare" and "exceptional" circumstances under federal law). However, where a plaintiff has prevailed on NJLAD claims in federal court, the Third Circuit requires the district court to consider possible application of a contingency multiplier to enhance the calculated lodestar amount. *Lanni v. New Jersey*, 259 F.3d 146, 152 (3d Cir. 2001). To determine whether the lodestar amount should be enhanced, the Court must consider whether the

---

[8] It should go without saying that both sides bear some responsibility for the truncated discussions to resolve the fee dispute. While neither side was obliged by rule or otherwise to negotiate at all, or for longer than it deemed sensible, the practical realities of modern litigation strongly incentivize robust engagement. Failure by parties to set aside pique, calibrate zeal, and patiently pursue an economically rational resolution often leads to the wasteful expenditure of resources and avoidable delay.

case was taken on a contingent basis, whether the attorney was able to mitigate the risk of nonpayment in any way, and whether other economic risks were aggravated by the contingency of payment. *Rendine v. Pantzer*, 141 N.J. 292, 339 (1995).

Where appropriate in a fee-shifting action, the contingency multiplier "should range between five and fifty-percent of the lodestar fee, with the enhancement in typical contingency cases ranging between twenty and thirty-five percent of the lodestar." *Id.* at 298. However, the Supreme Court of New Jersey has cautioned that fee enhancements should not be awarded as a matter of course but rather only where the specific facts of the case present an actual risk of nonpayment to the attorney. *See New Jerseyans for Death Penalty Moratorium v. New Jersey Dep't of Corr.*, 185 N.J. 137, 157 (2005); *Rendine*, 141 N.J. at 339. Moreover, in cases in which the likelihood of success is unusually strong, a court may properly consider the inherent strength of the prevailing party's claim as a mitigating factor. *Rendine*, 141 N.J. at 341 (citing *Hall v. Borough of Roselle*, 747 F.2d 838, 843–44 (3d Cir.1984) ("[O]ne can fairly conclude that from the outset the plaintiff had a very strong case and 'objectively viewed, the risk that plaintiff['s] counsel would come away empty handed was remote.'") (quoting *McMullan v. Thornburgh*, 570 F. Supp. 1070, 1076 (E.D. Pa. 1983))).

Here, Plaintiffs seek a fee enhancement of fifty percent of the lodestar amount "due to the substantial risk [] counsel accepted in bringing this matter." Motion for Fees at 28. They maintain that their lead counsel, Mr. Coyle, is among the "few attorneys" who practice in what they characterize as the "risky area of vaccine law," and assert that the nature of his contingency practice exposes him to considerable risk of nonpayment because not all cases succeed or settle. *Id.* Plaintiffs argue that their counsels' risk of nonpayment in this contingency NJLAD action warrants an enhanced fee award. Plaintiffs also contend their claims were sufficiently strong that,

13

absent resolution through Defendant's offers of judgment, they would have prevailed at trial, which they contend further supports their request for an enhancement.

The Court finds that Plaintiffs' counsel accepted sufficient risk in undertaking this action to support an eight percent fee enhancement, resulting in an increase beyond the lodestar amount of $3,999.98. The facts do not support more than that below-average enhancement. Consistent with the arguments in their fee application, Plaintiffs' claims were strong from the start. After this case was removed in November 2024, the parties stipulated to delay filing of Defendant's responsive pleading to explore immediate settlement options. Within five months of initiating this action, Plaintiffs accepted Defendant's offers of judgment. That rapid resolution is consistent with the objective strength of Plaintiffs' claims and the comparatively modest risk associated with their prosecution. Indeed, that strength rendered extensive litigation on the merits and trial unlikely and substantially mitigated any risk that fees would go unpaid. To be sure, before the ensuing fee application, no merits issues were adjudicated and the limited litigation that did occur largely concerned wasteful amendments to the pleadings and competing motions to remand and compel arbitration that were never decided. In sum, the facts here provide no basis to support Plaintiffs' demand for an excessive, top-of-the-range fifty percent enhancement. Rather, they support only a proportional, below-average enhancement of eight percent. *See, e.g., EEOC v. United Parcel Serv.*, No. 06-1453, 2009 WL 3241550, at *8–9 (D.N.J. Sept. 30, 2009) (rejecting a fifty percent requested enhancement as excessive and awarding a below-average five percent enhancement in a case resolved by a jury trial after several years of litigation).

//

//

//

14

**IV.    CONCLUSION AND ORDER**

For the foregoing reasons, the Court awards Plaintiffs' $49,999.75 in attorneys' fees, an eight percent enhancement, amounting to $3,999.98, and costs in the amount of $355.80, for an aggregate award of $54,355.53. Therefore,

**IT IS** on this 2nd day of June, 2026,

**ORDERED** that Plaintiffs' motion for attorneys' fees [D.E. 26] is **GRANTED** in part and **DENIED** in part; and it is further

**ORDERED** that, pursuant to the NJLAD, N.J.S.A. 10:5-27.1, Plaintiffs are awarded $54,355.53 in attorneys' fees, inclusive of all costs.

 /s/ *André M. Espinosa*
ANDRÉ M. ESPINOSA
United States Magistrate Judge

15